25CA2189 Peo in Interest of Camack 01-08-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2189
Pueblo County District Court No. 25MH30111
Honorable Amiel Markenson, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Sean Camack,

Respondent-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 8, 2026

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Sean Camack appeals the district court's order authorizing the involuntary administration of medications under the four-part test found in *People v. Medina*, 705 P.2d 961 (Colo. 1985).  We affirm the order.

## I.    Background

¶ 2    Camack was admitted to the Colorado Mental Health Hospital in Pueblo in February 2024 after he was found not guilty by reason of insanity in a first degree murder case.  He has been diagnosed with unspecified schizophrenia spectrum and other psychotic disorder, and he presents with symptoms including paranoia, disorganized thinking and speech, auditory and visual hallucinations, severe agitation, and a decreased need for sleep.

¶ 3    In November 2025, believing that Camack would not maintain consent to treatment, his treating psychiatrist, Dr. Paul Mattox, sought an order authorizing the involuntary administration of Zyprexa (olanzapine), lithium, and Thorazine (chlorpromazine).

¶ 4    Following a hearing — at which both Dr. Mattox and Camack testified — the district court issued an order authorizing the requested involuntary treatment, finding that the People had met their burden to prove all four *Medina* elements.

1

## II.  Discussion

¶ 5     Camack contests the sufficiency of the evidence as to the first and third *Medina* elements.  We conclude that sufficient evidence supports these elements.

### A.  Legal Principles and Standard of Review

¶ 6     A district court may authorize the involuntary administration of medication if the People establish each of the following elements by clear and convincing evidence: (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to

override any bona fide and legitimate interest of the person in refusing treatment.[1]  *Id.* at 973.

¶ 7     We determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the court's order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test.  *Id.* at ¶ 30.

¶ 8     Application of the *Medina* test is a mixed question of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they are supported by the record but review the court's legal conclusions de novo.  *Id.*  Both the resolution of testimonial conflicts and the determination of witness credibility are solely within the province of the fact finder.  *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.  Where the evidence

---

[1] When the state seeks to administer antipsychotic drugs to a mentally ill criminal defendant involuntarily so that they can stand trial, a reviewing court applies the Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 178 (2003).  However, reviewing courts apply state law tests if the state, as here, seeks to administer antipsychotics involuntarily for "a different purpose," including a purpose "related to the individual's dangerousness, or . . .the individual's own interests where refusal to take drugs puts his health gravely at risk."  *Id.* at 181-82.

supports the district court's findings and conclusions, we may not substitute our judgment for that of the district court. *People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

### B.     The First *Medina* Element

¶ 9     The first *Medina* element requires a court to determine whether the patient is incompetent to effectively participate in the relevant treatment decision. *Medina*, 705 P.2d at 973. A court may not order the forced medication of an involuntarily committed patient unless it is satisfied that the patient's mental illness has so impaired their judgment as to render them incapable of participating in decisions affecting their health. *Id.*

¶ 10     At the hearing, Dr. Mattox testified that Camack has "[v]ery little" insight into his mental illness and does not believe that he "ha[s] the major psychotic illness that he" indeed "suffer[s] from." Instead, he believes "he primarily has a trauma spectrum illness" and wishes to take medications only "for a short period of time." However, Dr. Mattox said Camack's primary mental health issue is his psychotic symptoms, which are not related to trauma and will not resolve without treatment. Consequently, in Dr. Mattox's expert opinion, Camack is incapable of effectively participating in decisions

affecting his health, including the decision on whether psychiatric medications are needed.

¶ 11     The district court credited Dr. Mattox's testimony, adopting the doctor's opinions as its own.  As noted, the testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test.  *R.K.L.,* ¶ 30.

¶ 12     Nonetheless, Camack asserts that his own testimony reflects that his judgment is not impaired and demonstrates that he is capable of actively participating in his mental health treatment and contributing constructively to his care.  But the district court expressed "severe concerns regarding [Camack's] credibility," stating that "frankly, the [c]ourt just does not find him credible" based on the court's view that he is simply unwilling to be "truthful when he has something to gain, which here would be no court order" requiring involuntary medication.

¶ 13     Because determinations of witness credibility are solely within the province of the fact finder, we are not free to disturb them.  *See Ramsey,* ¶ 23.  In any event, as the district court found, Camack's own testimony reflected a lack of insight into his mental illness.  He denied the severity of his mental illness, claiming that its "root

cause" "stem[med] from post-traumatic stress disorder," not a psychotic disorder. And when asked by his lawyer if he had any of the symptoms described by Dr. Mattox — namely, paranoia, hallucinations, and delusions — he answered, "No, ma'am," and attributed "what [he] was going through" to "reliving traumatic experiences."

¶ 14 Under these circumstances, we cannot conclude that the evidence was insufficient to support the district court's determination that Camack is incompetent to effectively participate in the relevant treatment decision.

### C. The Third *Medina* Element

¶ 15 The third *Medina* element — that a less intrusive treatment alternative is not available — "encompasses not only the gravity of any harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition." *Medina*, 705 P.2d at 974. A less intrusive alternative is "an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed

treatment." *People in Interest of Strodtman*, 293 P.3d 123, 133 (Colo. App. 2011).

¶ 16    As we understand him, Camack asserts that permitting him to voluntarily resume a regimen of Abilify — which he has previously taken and which has fewer side effects than Zyprexa — constitutes a less restrictive alternative. Further, he argues, because he has expressed a willingness to comply voluntarily with prescribed medication, there is no demonstrated need for court-ordered treatment. That is, in his view, his "voluntary participation is substantially likely to achieve the same therapeutic results as an involuntary order."

¶ 17    Although Camack stated that he was willing to take medications voluntarily, the district court rejected this testimony as not credible, and we are not free to second-guess this credibility determination. *See Ramsey*, ¶ 23. Further, though Dr. Mattox acknowledged that Abilify "could be" sufficient to treat Camack in the long term once he is stabilized, he testified that Zyprexa is "a good, if not one of the best antipsychotic medications for [the] acute stabilization" phase of Camack's treatment plan. He stated that,

thereafter, he would "[a]bsolutely" look at different alternatives, such as Abilify.

¶ 18    This testimony supports the district court's determination that, at the time of the hearing, there was no alternative as effective and less intrusive than the requested medications.  In particular, the court credited Dr. Mattox's testimony that Zyprexa was necessary to get Camack "out of his acute state," but that Abilify could be an alternative in the future.  This evidence amply supports a conclusion that, at the time of the hearing, Abilify was not a less intrusive alternative to the requested medications.

### III.    Disposition

¶ 19    The order is affirmed.

JUDGE FOX and JUDGE BROWN concur.